**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEVEN MABLE, <u>et</u> <u>al.</u>,** : | |
| **Plaintiffs** : | **CIVIL ACTION NO. 3:10-1214** |
| **v.** : | |
| **JEFFREY BEARD, <u>et</u> <u>al.</u>,** : | **(JUDGE MANNION[1])** |
| **Defendants** : | |

### M E M O R A N D U M

Pending before the court are the defendants' motion for summary judgment, (Doc. No. 148), and the report of Magistrate Judge Martin C. Carlson, which recommends that the defendants' motion be granted, (Doc. No. 191). The plaintiffs have filed objections to Judge Carlson's report. (Doc. No.192-93, Doc. No. 194, Doc. No. 200-01). Based upon the court's review of the record, the plaintiffs' objections will be overruled, Judge Carlson's report will be adopted, and the defendants' motion for summary judgment will be granted[2].

---

[1]The instant action was originally assigned to the Honorable A. Richard Caputo. By verbal order, on January 4, 2013, the matter was reassigned.

[2]The plaintiffs argue in their objections that the defendants' motion should not be considered with respect to defendant Beard because he was neither joined in the answer to the plaintiffs' amended complaint nor in the motion for summary judgment. However, upon review of the record, defendant Beard was, in fact, included in both the answer to the amended complaint, (Doc. No. 89), and the defendants' motion for summary judgment, (Doc. No. 148).

## I.    PROCEDURAL HISTORY

By way of relevant background, thirteen prisoners filed the instant civil rights action on June 8, 2010. (Doc. No. 1). An amended complaint was filed on June 13, 2011. (Doc. No. 82). Generally, the plaintiffs complain about the 24-hour lighting in the Restricted Housing Unit, ("RHU"), at SCI-Dallas claiming it to be a violation of their Eighth Amendment rights. For purposes of the instant memorandum, there are eight remaining plaintiffs: Steven Mable, Carrington Keys, Lamont Bullock, Nathaniel Hathorn, Richard Hammonds, Terrell Owens, Thurston Simmons, and Davon Hayes. The named defendants are Jeffery A. Beard, the former Secretary of the Pennsylvania Department of Corrections, as well as various SCI-Dallas officials, including Jerome Walsh, Superintendent; Robin Lucas, Assistant to the Superintendent and Grievance Coordinator; L. Mahally, Deputy Superintendent; Vincent Mooney, Deputy Superintendent; Myron Stanishefski, Health Care Administrator; Stanley Bohinski, D.O., Medical Director; Eric Sowga, Facility Safety Manger; and Michael Truchon, Maintenance Supervisor.

On June 8, 2012, after the close of discovery, the defendants filed a motion for summary judgment, (Doc. No. 148), along with a brief in support thereof, (Doc. No. 149), a statement of material facts, (Doc. No. 150), and supporting exhibits, (Doc. No. 151, Doc. No. 152, Doc. No. 153, Doc. No. 154). On June 28, 2012, plaintiff Keys filed a brief in opposition to the defendants' motion, (Doc. No. 159), along with a supporting affidavit, (Doc.

No. [160](#)), a "Statement of Disputed Factual Issues," (Doc. No. [161](#)), and supporting exhibits, (Doc. No. [162](#)). On July 2, 2012, plaintiff Keys filed a partial response to the defendants' statement of material facts[3]. (Doc. No. [163](#)). Also on July 2, 2012, plaintiff Bullock filed an exhibit in the form of Defendant Walsh's Answers to Plaintiff's First Request for Interrogatories and for the Production of Documents. (Doc. No. [164](#)). Subsequently, on July 25, 2012, plaintiffs Bullock, Hathorn, Keys, Mable, Owens, Hammonds, and Simmons filed a brief in opposition to the defendants' motion for summary judgment, (Doc. No. [174](#)), along with a "Statement of Disputed Factual Issues," (Doc. No. [175](#)), the declaration of plaintiff Bullock, (Doc. No. [176](#)), and supporting exhibits, (Doc. No. [177](#)). The defendants filed a reply brief in support of their motion for summary judgment on August 7, 2012. (Doc. No. [179](#)). The plaintiffs filed a sur-reply on August 23, 2012. (Doc. No. [185](#)).

On September 21, 2012, Judge Carlson filed the report currently before the court which recommends that the defendants' motion for summary judgment be granted. (Doc. No. [191](#)). Specifically, Judge Carlson determined that all but two of the plaintiffs procedurally defaulted their claim by failing to follow the requirements of the prison grievance system and, even the two that did not completely procedurally default their claim, procedurally defaulted their claim as to some of the defendants. In any event, Judge Carlson determined

---

[3]The response was filed to paragraphs 49-63 of the defendants' statement of material facts.

that the plaintiffs claim regarding the lighting in the RHU fails on the merits.

On October 4, 2012, objections to the report were filed by plaintiff Hayes, (Doc. No. 192), along with a supporting brief, (Doc. No. 193). On the same day, plaintiff Keys filed objections to the report. (Doc. No. 194). The defendants filed responses to these objections on October 16, 2012. (Doc. No. 198).

On November 13, 2012, objections to the report were filed on behalf of all plaintiffs. (Doc. No. 200)[4]. The defendants filed a brief in opposition to the plaintiffs' objections on November 27, 2012. (Doc. No. 202). The plaintiffs filed a reply brief on December 11, 2012. (Doc. No. 203).

## II.    STANDARDS OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

_____

[4]The same objections were re-docketed on the following day. (Doc. No. 201).

4

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

In considering a summary judgment motion, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

> nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988) (citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

## III.   DISCUSSION

A portion of the plaintiffs' objections challenges Judge Carlson's finding that all but two of the plaintiffs procedurally defaulted on their claim and, even with respect to the remaining two, they procedurally defaulted with respect to their claim against some of the defendants. Regardless of whether or not any of the plaintiffs procedurally defaulted, the court finds that the plaintiffs' Eighth Amendment claim regarding the lighting in the RHU has no merit[5].

To this extent, the plaintiffs allege in their amended complaint that the night light in the RHU at SCI-Dallas is a 24-hour light used as a means of punishment under the guise of policy. The plaintiffs allege that the light is approximately 74 watts in some cells and 64 watts in others. As a result of the constant lighting, the plaintiffs allege that they suffer various ailments, including eye problems, sleeping disorders and headaches. The plaintiffs allege that the constant lighting constitutes cruel and unusual punishment under the Eighth Amendment.

Despite the plaintiffs' allegations, the undisputed facts of record demonstrate that the RHU cells consist of two 28-watt fluorescent light bulbs

---

[5]As the court finds that resolution of the instant action on the merits is more expeditious than analyzing each of the eight remaining plaintiff's exhaustion of administrative remedies, the court will dispose of the instant action on the merits and makes no finding with respect to the plaintiffs' exhaustion or procedural default.

for the day time light and one 7-watt fluorescent bulb for the security light[6]. These bulbs are contained within the same light fixture in the cell above the desk and are controlled by staff, not the inmates, for security reasons[7]. The security light is turned on when final medications are issued at approximately 10:00 p.m. in the evening and kept on until approximately 6:00 a.m. Once the security light is turned on in the evening, the main fluorescent lights in the cells are turned off. At approximately 6:00 a.m., the process is reversed when the main lights are turned on and the security light turned off.

This procedure was implemented on February 26, 2009, when defendant Mahally issued a memorandum to inmates in which he stated, in part, "Please be advised that night lights located within each RHU cell will not be activated until the days final medication has been dispensed. This will be standard procedure." This procedure is consistent with Department of Corrections' Policy 6.5.1, Administration of Security Level 5 Housing Units,

---

[6]As discussed by Judge Carlson, the plaintiffs never filed an appropriate response to the defendants' statement of material facts as required by Local Rule 56.1. Although the plaintiffs argue in response to Judge Carlson's report that they did not do so because the defendants' statement of material facts was too long and should have been broken down by facts relevant to each plaintiff, the defendants have no such obligation where multiple plaintiffs file an action. As such, as found by Judge Carlson, the defendants' statements are deemed admitted.

[7]The defendants' materials indicate that inmates in the RHU previously had control over the lights in the RHU, but were breaking the switches. As a result the switches in the RHU cells were disabled.

and was issued as a result of a joint decision by several staff members in order to enhance the efficiency and security of the RHU. To this extent, nurses and escort officers were having trouble seeing into the cells at night to check if the inmates were taking the medications which they were distributing. In addition, the defendants' materials provide that the night light aids the staff in confirming the presence of the inmate in the cell during regular rounds and to confirm that they are not injured or sick.

Upon arrival in the RHU, all RHU inmates are issued an RHU Inmate Handbook, which addresses the lighting in the RHU. The Handbook reads, in relevant part, "The lights in your cell are controlled by RHU staff. Do not attempt to cover or obstruct your cell lighting. A "night light" will be activated after the days final medication has been dispensed. Once the night light is turned on the large fluorescent lights will be turned off. At 600 hours this process will be reversed and large fluorescent lights will remain on throughout the day."

Considering the above facts, in order for the plaintiffs to establish an Eighth Amendment claim of cruel and unusual punishment based on the conditions of their confinement, they must show: (1) a sufficiently serious deprivation; and (2) that the defendants were deliberately indifferent to this deprivation. See Farmer v. Brennan, 511 U.S. 825, 828, 834 (1994); Young v. Quinlan, 960 F.2d 351, 359–60 (3d Cir. 1992) (citing Wilson v. Seiter, 501 U.S. 294, 298–303 (1991)); Tsosie v. Dunbar, 2012 WL 1191642, *7 (M.D.Pa.

April 10, 2012). The Supreme Court has explained that the first prong is objective, while the second prong is subjective. Wilson, 501 U.S. at 298.

With respect to Eighth Amendment claims based upon prison lighting conditions, the Court of Appeals for the Third Circuit as recently stated,

> "[T]he Eighth Amendment prohibits punishments which . . . involve the unnecessary and wanton infliction of pain, . . . or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (internal citations and quotations omitted). Included among unnecessary and wanton inflictions of pain are those punishments completely without penological justification. Id. Courts have held that causing inmates to suffer physical and psychological harm by living in constant illumination is without penological justification. See, e.g., Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (considering a claim from a prisoner who suffered grave sleeping and other problems because of large fluorescent lights directly in front of and behind his cell that constantly illuminated his cell 24 hours a day in such a way that he could not distinguish day from night.) However, courts also have concluded that security lights that are similar to night lights and that provide only enough light for officers to conduct nighttime security checks do not impinge on a prisoner's constitutional rights. See, e.g., Wills v. Terhune, 404 F.Supp.2d 1226, 1231 (E.D.Cal. 2005); King v. Frank, 371 F.Supp.2d 977, 985 (W.D.Wis. 2005) (rejecting a claim based on light from a 9-watt bulb that allowed correctional officers to see prisoners at night). Continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners. See O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987); see generally Turner v. Safely, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Sims v. Piazza, 462 Fed.Appx. 228, 232 (3d Cir. 2012)

The facts presented in the instant action fall squarely in line with those cases which have found continuous lighting to be permissible. Specifically, the daytime lights in the RHU consist of two 28-watt fluorescent bulbs which are

on from approximately 6:00 a.m. until approximately 10:00 p.m. The defendants' materials provide that these lights are necessary to see inside of the RHU cells to ensure that the inmates are in their cells and that they are not injured or sick. In addition, they assist staff when dispensing medications to ensure that the inmate actually takes the medications which are distributed. The night light, which is activated at approximately 10:00 p.m. and remains illuminated until approximately 6:00 a.m., is a 7-watt fluorescent bulb that provides minimal illumination. The defendants' materials provide that this lighting is also necessary for security reasons, particularly to assist staff with taking count and assuring that all inmates are present and are not injured or sick.

In addition to the above, although the plaintiffs allege that they suffered various injuries as a result of the constant illumination in the RHU, none of the evidence presented by the plaintiffs establishes that any need for medical

treatment was directly related to the lighting in the RHU[8]/[9]. Although the plaintiffs argue in their objections that the declaration of defendant Stanishefski establishes "that the injuries sustained by plaintiffs required sufficient medical treatment and was linked to be caused by the RHU lighting," nothing in defendant Stanishefski's declaration can be read in such a manner. In fact, defendant Stanishefski indicates in his declaration that he has no specific recollection of any complaints about the RHU lighting from the plaintiffs and does not recall receiving any request slips from the plaintiffs or being asked to answer inmate grievances from them relating to the RHU lighting or any alleged symptoms caused by the lighting. Moreover, while defendant Stanishefski indicates that to the best of his knowledge the plaintiffs have received adequate and appropriate medical treatment and that medical

---

[8]Plaintiff Keys argues in his objections that his assertion that he lost sleep as a result of the constant illumination in the RHU is sufficient to survive the defendants' motion for summary judgment and that he need not present any evidence to establish his Eighth Amendment claim. However, on a motion for summary judgment, where the defendants have presented undisputed facts demonstrating that the plaintiffs have not established that their medical needs were the result of the illumination in the RHU, the plaintiffs must do more than rely on their own unsupported allegations to refute the defendants' materials.

[9]To the extent that the argument is related, the plaintiffs argue in their objections that, prior to the close of discovery, they filed a motion to compel discovery, which was never ruled upon. Upon review of the docket, the plaintiffs' motion to compel discovery, (Doc. No. 158), was denied on July 5, 2012, (Doc. No. 166).

staff addressed all of their medical needs in a professional and competent manner, nothing in defendant Stanishefski's declaration indicates that the plaintiffs' medical needs were related to the RHU lighting.

## IV.    CONCLUSION

Considering the above, the plaintiffs have failed to establish that the 24-hour lighting in the RHU constituted a sufficiently serious deprivation so as to rise to the level of an Eighth Amendment violation. As such, the plaintiffs' objections to Judge Carlson's report will be overruled and Judge Carlson's report will be adopted to the extent that the defendants' motion for summary judgment will be granted on the merits of the plaintiffs' Eighth Amendment claim.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  June 4, 2013**

C:\Users\pronko\Desktop\10-1214-01.wpd